UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

KEITH A. YERIAN,

    Debtor.

                                            Bankr. Case No. 6:15-bk-1720-KSJ

_____

SUN Y PAK,

    Appellant,

v.                                                          Case No. 6:17-cv-460-Orl-37

RICHARD BLACKSTONE WEBBER, II,
as TRUSTEE,

    Appellee.

_____

## ORDER

In the instant appeal, Appellant Sun Y. Pak ("**Pak**") challenges the U.S. Bankruptcy Court's final judgment against her. (Docs. 1, 27, 28.) Appellee Richard B. Webber ("**Trustee**") opposes. (Doc. 26.) For the following reasons, the Bankruptcy Court's final judgment is due to be vacated and the matter is due to be remanded for additional factual findings.

### I.    PROCEDURAL HISTORY

This action commenced when Debtor Keith A. Yerian ("**Yerian**") filed a petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida.

(*See* Yerian B.R. Doc. 1, p. 1.)[1] In it, Yerian sought to discharge his debts as an honest debtor. (*Id.*; *see also* Pak B.R. Doc. 152, pp. 17, 26.) As required, he submitted personal financial information about his claimed estate, and the Bankruptcy Court appointed Trustee as administrator. (*See* Yerian B.R. Docs. 1, 3.)

On review of Yerian's claimed estate, Trustee uncovered additional items he believed qualified as part of Yerian's bankruptcy estate. (Pak B.R. Doc. 1.) Pursuant to 11 U.S.C. §§ 105, 544, 548, 550, and 727 of the U.S. Bankruptcy Code, Trustee commenced an action against Yerian to, among other things, recover the value of these missing items. (*Id.*) To accomplish this, Trustee also included Yerian's non-debtor wife, Pak, in his action. (*See id.* ¶¶ 38–48 (Counts IV–VI targeted to Pak).) Of issue here, Pak and Yerian had a joint bank account ("**E-Trade Account**") whose funds were transferred into an individual account ("**Transfer**") for Pak ("**Pak Account**"). (Pak. B.R. Doc. 152, pp. 5–6.) Trustee sought to avoid the Transfer as fraudulent to recoup Yerian's half of the E-Trade Account's balance—$128,000. (*See id.*)

Whether avoidance was possible depended on the type of property the E-Trade Account constituted under Florida law—the Bankruptcy Code exempts certain types of state-defined jointly-held property, so if exempt, subsequent transfers cannot be avoided. (*See id.* at 21–23 (outlining Florida law of fraudulent transfers).) *See also* 11 U.S.C.

---

[1] With a jumbled transmitted record, for clarity's sake, citations to Yerian's Bankruptcy Petition, Case No. 6:15-bk-1720-KSJ are labelled "Yerian B.R." Citations to Pak's Bankruptcy Record, Case No. 6:15-ap-64-KSJ, are titled "Pak B.R." Citations without either notation refer to this Court's record, Case No. 6:17-cv-460-Orl37. This Order cites the Bankruptcy Court's Oral Ruling as Pak B.R. Doc. 152, also found at Doc. 11-8.

§ 522(b)(3)(B) (defining exempt property from bankruptcy estate); Fla. Stat. § 726.102(2)(c) (defining exempt property from which transfers cannot be avoided); *Beal Bank, SSB v. Almand & Assocs.*, 780 So.2d 45, 52–53 (Fla. 2001) (describing types of jointly-held property under Florida law and their exempt status). Pak claimed that the E-Trade Account was exempt from Yerian's bankruptcy estate under two alternate theories: (1) she owned it individually; or (2) the couple owned it as a tenancy by the entireties ("**TBE**"). (*See* Pak B.R. Doc. 136, pp. 51–52.) Trustee countered that the E-Trade Account was a joint tenancy with right of survivorship ("**JTWROS**"). (*See id.* at 32–37.)

The case proceeded to trial on November 30, 2016 and December 12, 2016. (Pak B.R. Docs. 127, 131.) The Bankruptcy Court issued an oral ruling on February 14, 2017, in favor of Trustee, finding the E-Trade Account was JTWROS and thus not exempt from Yerian's estate. (Pak B.R. Doc. 152.) To that end, the Bankruptcy Court entered final judgment against Pak for $128,000, avoiding the Transfer as fraudulent. (Pak B.R. Doc. 141.) Pak then timely filed a Notice of Appeal to this Court, seeking review of the final judgment. (Doc. 1.) Both parties submitted briefing, so the matter is now ripe for adjudication. (Docs. 26–28.)[2]

## II. LEGAL STANDARDS

### A. Standards of Review

District courts have jurisdiction over appeals from a bankruptcy court's final judgments under 28 U.S.C. § 158(a)(1). In reviewing these decisions, a district court

---

[2] The parties filed amended briefs in compliance with the Court's August 29 Order. (Doc. 25.) The Court cites the docket entries for these amended briefs.

functions as an appellate court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). Conclusions of law are reviewed de novo. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Factual findings are reviewed for clear error. *Id.* Clear error exists if "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Jones v. Childers*, 18 F.3d 899, 904 (11th Cir. 1994) (quotation omitted). District courts may not make independent factual findings. *See In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). Therefore, "[i]f the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." *Id.*

**B. Defining the Estate**

Filing a petition for bankruptcy creates a bankruptcy estate. 11 U.S.C. § 541(a). This estate encompasses all of a debtor's legal and equitable interests in real and personal property, except for items specifically authorized as excludable. *Id.* Such excludable items include "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law." *Id.* § 522(b)(3)(B). Thus defining the contours of a bankruptcy estate often turns on state law exemptions. Here, Florida law controls. *See Butner v. United States*, 440 U.S. 48, 55 (1979) (announcing that state property law applies in bankruptcy proceedings).

Florida exempts property held as TBE from the bankruptcy estate so long as only one spouse files for bankruptcy. *Beal Bank*, 780 So.2d at 53. This is because TBE is a type of property available only to married couples—it "belongs to neither spouse individually,

-4-

but each spouse is seized of the whole." *Id.* As such, "only the creditors of both the husband and wife, jointly, may attach [TBE] property." *Id.* This exemption is extended to transfers from TBE property under the Florida Uniform Fraudulent Transfer Act ("**FUFTA**"), even if the circumstances surrounding the transfer suggest fraud. *See* Fla. Stat. § 726.102(2)(c) (defining as exempt "an interest in property held in [TBE] to the extent it is not subject to process by a creditor holding a claim against only one tenant"); *see also, e.g.*, *In re Anderson*, 561 B.R. 230, 240 (Bankr M.D. Fla. 2016) (under FUFTA and the Bankruptcy Code, "a transfer of property that is exempt from creditors may not be the subject of an action to avoid a fraudulent transfer"). Consequently, only the fraudulent creation of TBE property will subject transfers from TBE property to avoidance. *See, e.g.*, *In re Blitstein*, 105 B.R. 133, 135 (Bankr. S.D. Fla. 1989). In short, Florida is highly protective of TBE property. *See Beal Bank*, 780 So.2d at 57 (discussing policy considerations undergirding Florida's special treatment of TBE).

Florida does not extend the same exemption status to other types of jointly-held property that can be proportionally divided. *See id.* at 52–53. This includes property held as JTWROS, where each tenant holds "only his or her separate share" to which a creditor can attach. *Id.* at 53. As such, Florida allows creditors of one spouse to seize both JTWROS property and transfers from such property as part of the debtor's bankruptcy estate. *Id.* And unlike TBE, a debtor's fraudulent exclusion of such property can lead to avoidance and recovery proceedings under 11 U.S.C. § 550. Because Florida treats TBE and JTWROS oppositely in this respect, defining the bankruptcy estate for a married debtor with jointly-titled property turns on that property's classification.

## C. Classifying the Property

Under Florida law, the composition of TBE and JTWROS boils down to a single variance—marriage. *Beal Bank*, 780 So.2d at 52. Other than marriage, TBE and JTWROS share the same five unities: possession, interest, title, time, and survivorship. *Id.* But married couples may own both TBE and JTWROS property, which complicates matters when one spouse files for bankruptcy and seeks to determine which property should be exempt from the estate—particularly if the couple jointly acquired title to property after marriage without realizing TBE ownership was possible. *See id.* at 53–55. To avoid such complications, the Florida Supreme Court announced a presumption in favor of TBE ownership for married couples jointly owning property ("**Beal Bank Presumption**"). *Id.* at 58. Florida's legislature then codified the *Beal Bank* Presumption, announcing, "[a]ny deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." Fla. Stat. § 655.79. With this, courts attempting to classify joint property owned by married couples under Florida law must engage the *Beal Bank* Presumption. *See Beal Bank*, 780 So. 2d at 61; *In re Sinnreich*, 391 F.3d 1295, 1297 (11th Cir. 2007.)

Applying the *Beal Bank* Presumption is rather straightforward. First, the property at issue must meet the six required unities of TBE. *Beal Bank*, 780 So.2d at 58. Joint bank accounts normally do. *See id.* at 61; *see also In re Mathews*, 307 F. App'x 266, 268–69 (11th Cir. 2009) (discussing types of personal property that the *Beal Bank* presumption

applies to).³ Second, the court must determine whether there was evidence of an express disclaimer—a writing that specifies the account as TBE or otherwise and a deliberate choice by the couple to choose a type of ownership. *Id.* at 60. If the couple expressly chose TBE or JTWROS, the inquiry is over and the account is either TBE or JTWROS, respectively. *Id.* But if a writing merely stated that the account being opened was JTWROS without offering TBE, the *Beal Bank* Presumption applies and the account is *presumed* TBE. *Id.* The *Beal Bank* Presumption operates in these situations—where it is unclear whether the married couple deliberately chose a type of ownership other than TBE. *See id.* So determining whether the *Beal Bank* Presumption applies is a factually-driven activity that involves scrutinizing both the types of accounts offered to the couple and the documents they signed when opening the account.⁴

When the *Beal Bank* Presumption applies, the creditor shoulders the burden to prove by a preponderance of the evidence that the property is not TBE. *See id.* at 58–59. To accomplish this, the creditor can put on evidence that the couple fraudulently created the TBE property. *See id.* at 61; *see also In re Blitstein*, 105 B.R. at 135. To prove such fraud at inception, the creditor can show, among other things, that the debtor acted "with actual

---

³ While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

⁴ Many courts have conducted this analysis. *See, e.g., In re Anderson*, 561 B.R. at 235–41; *In re Benzaquen*, 555 B.R. 63, 65, 68–69 (Bankr. S.D. Fla. 2016); *Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1255 (M.D. Fla. 2015); *In re Stephenson*, No. 6:11-bk-18901-ABB, 2012 WL 4896725, at *1 (Bankr. M.D. Fla. Oct. 4, 2012); *Mathews v. Cohen*, 382 B.R. 526, 531–33 (Bankr. M.D. Fla. 2007), *affirmed by In re Mathews*, 307 F. App'x at 268; *In re Robedee*, 367 B.R. 901, 907–09 (Bankr. S.D. Fla. 2007); *In re Wingate*, 377 B.R. 687, 698–701 (Bankr. M.D. Fla. 2006).

intent to hinder, delay, or defraud." *See* 11 U.S.C. § 548(a)(1)(A); *see also* Fla. Stat. § 726.105(1)(a). Then, only if the creditor succeeds at proving the TBE property was fraudulently created can fraudulent transfers from TBE property be avoided. *See In re Blitstein*, 105 B.R. at 135; *see also Sneed v. Davis*, 184 So. 865, 869 (Fla. 1938). Otherwise, property that has the six unities, no express disclaimer, and was not fraudulently created is TBE. *Beal Bank*, 780 So.2d at 61. It and all subsequent transfers from it are exempt from the reach of a single spouse's creditors. *See id.*; *see also In re Sinnreich*, 391 F.3d at 1296; *In re Wingate*, 377 B.R. at 700–01.

The Florida Supreme Court has recognized one exception where the creditor does not have the burden of proof. When the financial institution does not offer TBE as a form of ownership, or expressly precludes TBE ownership, an express disclaimer is not possible, so of course the *Beal Bank* Presumption does not apply. *Beal Bank*, 780 So.2d at 61. Indeed, Florida law does not ascribe a type of ownership to an account that the financial institution expressly chooses not to offer. Nevertheless, if the debtor still maintains that the couple intended the property as TBE, he can offer such evidence. *Id.* As such, the debtor shoulders the burden to show TBE ownership, still by preponderance of the evidence. *Id.*

Against this legal backdrop, the Court turns to the Bankruptcy proceedings below.

### III. BANKRUPTCY PROCEEDINGS

On February 14, 2017, the Bankruptcy Court issued an oral ruling announcing its factual findings and legal conclusions. (Pak B.R. Doc. 152.) The Court summarizes the relevant findings below.

## A. Bankruptcy Court's Factual Findings

The story begins with Debtor Yerian. (*Id.* at 8.) An Ohioan, Yerian formerly enjoyed an active and successful career in software development, even conceiving a software company, ETC Computers, Inc., with his ex-wife Deborah Yerian ("**Deborah**"). (*Id.*) Ever a factotum, Yerian also acquired skill and knowledge of stock trading. (*Id.* at 11.) Indeed, by the time he divorced Deborah and married Pak, "he was a well-versed stock trader and had traded stock for years,"—quite the "sophisticated businessman." (*Id.* at 10–11.)

Pak, on the other hand, had no experience "of any demonstrated kind . . . in the stock market."(*Id.* at 11.) She worked at ETC Computers, Inc. for a bit and married Yerian in October 2008. (*Id.* at 9, 11.) Following their nuptials, they opened the E-Trade Account on October 24,[5] funded with $70,000 gifted by Pak's mother to celebrate the union. (*Id.* at 10–12.) Pak's mother transferred the funds in three installments—first $50,000, then two installments of $10,000 each. (*Id.* at 10–11.)

From 2008 to 2012, there were "thousands of stock trades," and "the trading was very successful." (*Id.* at 11.) So much so that "the amount increased from $70,000 to well over $250,000." (*Id.*) Bluntly, "there was a substantial return in the investment." (*Id.*)

During trial, Pak testified that she was the reason for the E-Trade Account's exceptional performance during an economic recession, despite never having traded

---

[5] The E-Trade Account was titled "Keith A. Yerian & Sun Y. Pak JTWROS." (*See* Doc. 13-3.)

-9-

stock before.[6] (*Id.* at 13.) Such testimony "strained" the Bankruptcy Court's beliefs and was deemed not credible. (*Id.*) Rather, the Bankruptcy Court attributed the E-Trade Account's substantial growth to Yerian, who evidence showed "effectuated every stock trade." (*Id.*)

While the E-Trade Account triumphed, ETC Computers, Inc. flopped. (*Id.* at 9.) Matters came to a head in November 2011, when Deborah filed suit against Yerian and others based on business-related issues. (*Id.*; *see also* Pak B.R. Doc. 121-11.) Four months later, the Transfer occurred, whereby Pak and Yerian depleted the E-Trade Account and moved its $257,000 to the Pak Account. (Pak B.R. Doc. 152, pp. 11–12; *see also* Pak B.R. Doc. 120-24.) Pak then used $173,000 from the Pak Account to purchase a Florida home. (Pak B.R. Doc. 152, p. 13.) The couple decamped in May, with $81,000 remaining in the Pak Account. (*Id.*) This money was somehow spent, but on what and by whom remains unknown—the Bankruptcy Court found no credibility in Pak's testimony about the Pak Account's expenditures and found the money "unaccounted for." (*Id.* at 14.) The Bankruptcy Court did not state whether the Pak Account was closed.

B.     **Bankruptcy Court's Legal Conclusions**

After enumerating its factual findings, the Bankruptcy Court announced its legal conclusions. It concluded that Pak and Yerian owned the E-Trade Account as JTWROS ("**JTWROS Finding**"), discrediting Pak's primary argument that it was individually

---

[6] The Bankruptcy Court also found that "during the testimony, it was clear that Ms. Pak did not understand the [account] statements or what the various matters meant." (Pak B.R. Doc. 152, p. 13.)

owned. (Pak B.R. Doc. 152, pp. 24–25.) As support, the Bankruptcy Court stated:

> [T]he original [E-Trade Account] established in 2008 – October 24, 2008 – was jointly owned. The monies were jointly owned; And that Mr. Yerian was the primary stock trader. Perhaps Ms. Pak had some input, but I would not find it to be substantial, although she has and is entitled as the joint tenant with right of survivorship to have half the monies.
> But it was a joint gift. It was to both of them. The [E-Trade Account] was joint.

(*Id.*)

The Bankruptcy Court made no mention of Pak's secondary argument that the E-Trade Account was TBE. (*See generally id.*) Instead, based on the JTWROS Finding, the Bankruptcy Court devoted its legal analysis to evaluating whether the Transfer could be avoided as fraudulent. (*Id.* at 22–25.) In so doing, it looked at the suspect circumstances surrounding the Transfer—the litigation between Yerian and Deborah and other "numerous badges of fraud"—to find "intentional fraud in the scheme to move the money away." (*Id.* at 24–25.) From this, it concluded "that the Trustee [was] entitled to avoid the fraudulent transfer and receive a judgment in the amount of [Yerian's] interest of $128,000." (*Id.* at 25.)

IV. ANALYSIS

The Court's task is to review the Bankruptcy Court's final judgment against Pak. Pak calls on the Court to vacate the judgment, while Trustee seeks affirmance. (*See* Docs. 26–28.) On review, the Court finds no clear error with the Bankruptcy Court's factual findings regarding the E-Trade Account, and agrees that the couple jointly owned and opened the account after their marriage. But the Court concludes that the Bankruptcy Court misapplied Florida law. Hence, on de novo review, its final judgment against Pak

-11-

is due to be vacated and this case is due to be remanded for additional factual findings. *See In re Sublett*, 895 F.2d at 1384.

Against *Beal Bank*'s clearly-established framework, the Bankruptcy Court's JTWROS finding misses the mark. Its ruling made no mention of TBE as a form of property ownership. Instead, the Bankruptcy Court zeroed in on Pak's primary argument that she alone owned the E-Trade Account. (*See* Pak B.R. Doc. 152, pp. 23–24.) Once the Bankruptcy Court discredited this argument, it apparently thought that JTWROS was the only available alternative property form, despite Pak's secondary position arguing exactly the opposite. (*See* Pak B.R. Doc. 152, p. 13 (statement of Bankruptcy Court that "[i]t [is] undisputed that [the E-Trade Account] was JTWROS."); *see also* Pak B.R. Doc. 136, pp. 51–52 (asserting argument that the E-Trade Account was alternatively TBE).) Regardless of its reasoning, the Bankruptcy Court latched on to the notion that the E-Trade Account was JTWROS, enabling it to avoid the Transfer. (*See* Pak B.R. Doc. 152, pp. 23–25.) This was error.

The Bankruptcy Court erred by not linking two key findings: (1) the E-Trade Account was JTWROS; and (2) Pak and Yerian were married when they opened it. Together, these findings signal that the E-Trade Account possessed all required unities for TBE ownership. Thus *Beal Bank* springs into action. With this, the Bankruptcy Court should have proceeded to examine the circumstances surrounding the opening of the E-Trade Account, specifically whether: (1) E-Trade allowed TBE ownership; and, if so, (2) the couple expressly disclaimed it. But the Bankruptcy Court's ruling contained no such factual findings, and the only record evidence that speaks to the issue of express

disclaimer was one question in Yerian's testimony, where his attorney asked if he had "any option to [his knowledge] to elect [the E-Trade Account] as [TBE.]" (Pak B.R. Doc. 134, ¶¶ 1–3.) He said no. (*Id.* ¶ 4.) Such scant evidence hardly resolves the issue, so additional factual findings are needed to evaluate whether the *Beal Bank* presumption applies.

Therefore, because the Bankruptcy Court did not engage the *Beal Bank* analysis, remand is necessary to develop further factual findings on this point. If the *Beal Bank* presumption applies, it is Trustee's burden to overcome by preponderance of the evidence. If he does not, then the E-Trade Account remains TBE and exempt from Yerian's bankruptcy estate, not avoidable, despite the Bankruptcy Court's finding of fraud, based on FUFTA and the Bankruptcy Code.

Trustee lobs several other arguments in favor of affirmance. Although none are persuasive, the Court briefly addresses them. First, Trustee asserts that judicial estoppel bars the Court from evaluating the E-Trade Account's legal status. (Doc. 26, pp. 19–21.) But this bungles the doctrine, which operates only when parties take "inconsistent positions" in separate judicial proceedings—not, as here, where a party makes alternative arguments in a single proceeding. *See Slater v. U.S. Steel Corp.*, No. 12-15548, 2017 WL 4110047, at *1 (11th Cir. Sept. 18, 2017) (en banc).

Second, Trustee maintains that the Court's standard of review is limited to clear error by contending that the JTWROS Finding was factual, not legal. (Doc. 26, pp. 15–16.) But the determination of what legal form of property the TBE Account constitutes is just that—a legal question that involves the application of Florida law and the Bankruptcy

-13-

Code. *See In re Mathews*, 307 F. App'x at 268.

Third, Trustee opines that the E-Trade Account is missing two required unities—possession and interest—so it cannot be TBE. (*See id.* at 21–35.) The Court is buffaloed by this argument. Because JTWROS and TBE share the same unities, apart from marriage, accepting Trustee's argument here would not only prevent the E-Trade Account from being TBE, but also JTWROS. Trustee cannot have his cake and eat it, too.

Last, Trustee posits that remand for additional factual findings is unnecessary because the Court can presume that the Bankruptcy Court fully considered the possibility that the E-Trade Account was TBE. (Doc. 26, pp. 35–36 (citing *United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004).) Trustee asks too much, given the gap between the Bankruptcy Court's ruling and Florida's TBE structure. To afford such deference to the Bankruptcy Court's ruling, the Court would need some indication, even a blip, that *Beal Bank* or the possibility of TBE crossed the Bankruptcy Court's radar.

Therefore, although the Court disfavors remand, it is particularly appropriate here to straighten out this misapplication of Florida law. The Bankruptcy Court is instructed to reconsider its February 14, 2017 oral ruling in light of this Order.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The U.S. Bankruptcy Court's Final Judgment entered against Appellant Sun Y. Pak in the amount of $128,000 is **VACATED** (Pak B.R. Doc. 141, p. 2, ¶2).

2. This case is **REMANDED** to the U.S. Bankruptcy Court for further factual findings consistent with this Order.

-14-

3. The Clerk is **DIRECTED** to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 16, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record